IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

STACY M. T., [1]
    Plaintiff,

        v.                            Civil No. 3:19cv101 (MHL)

ANDREW M. SAUL, [2]
Commissioner of Social Security,
    Defendant.

### REPORT AND RECOMMENDATION

    This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits ("DIB") under the Social Security Act (the "Act").

    Plaintiff, Stacy M. T. ("Plaintiff"), is fifty-five years old, has a college education and previously worked as an adult literacy instructor. (R. at 155, 159.) On April 10, 2015, Plaintiff filed an application for DIB, alleging disability as of March 11, 2014, due to posttraumatic stress disorder ("PTSD"), a back injury and hypersensitivity. (R. at 146-47, 158.) The Social Security Administration ("SSA") denied Plaintiff's claim initially on May 20, 2015, and again upon reconsideration on September 18, 2015. (R. at 59-71.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and the hearing was held on March 9, 2017. (R. at 34-58.) On

---

[1]    The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2]    On June 4, 2019, the United States Senate confirmed Andrew M. Saul to a six-year term as the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Saul should be substituted for former Acting Commissioner Nancy A. Berryhill as the defendant in this matter.

October 25, 2017, the ALJ issued a written opinion, denying Plaintiff's claim and concluding that Plaintiff did not qualify as disabled under the Act. (R. at 10-20.) Plaintiff requested review of the ALJ's decision, and on December 13, 2018, the Appeals Council denied this request, rendering the ALJ's decision as the final decision of the Commissioner of Social Security ("Commissioner"). (R. at 1-3.)

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred in three ways: (1) in finding that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, arguing that the ALJ ignored "substantial evidence in the record that [Plaintiff's] mental impairment was of such severity to drastically limit her activities and her ability to work"; (2) in finding that Plaintiff had the residual functional capacity to perform a full range of work, with additional non-exertional limitations, arguing that the ALJ disregarded undisputed evidence and improperly weighed the consultative examiner's opinion; and (3) by failing to consider the vocational expert's testimony in concluding that Plaintiff could perform other work that exists in significant numbers in the national economy. (Mem. in Support of Pl.'s Mot. for Summ. J. at 2-7, ECF No. 7 ("Pl.'s Mem.").)

This matter now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross-motions for summary judgment, rendering the matter ripe for review.[3] For the reasons set forth below, the Court RECOMMENDS that Plaintiff's

---

[3]     The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

Motion for Summary Judgment (ECF No. 6) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 8) be GRANTED and the final decision of the Commissioner be AFFIRMED.

## I.      STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the Social Security Administration's disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

In considering the decision of the Commissioner based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in

the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity ("RFC"), accounting for the most that the claimant can do despite her physical and mental limitations. § 404.1545(a). At step four, the ALJ assesses whether the claimant can perform her past work given her RFC. § 404.1520(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. § 404.1520(a)(4)(v).

## II.     THE ALJ'S DECISION AND RELEVANT REGULATIONS

On March 9, 2017, the ALJ held a hearing during which Plaintiff (represented by counsel) and a vocational expert ("VE") testified. (R. at 34-58.) In addition to treatment records, which included records from Plaintiff's primary care physician and Peggy Blaylock, L.C.S.W., a treating clinician who provided counseling and therapy to Plaintiff, the record included a mental status evaluation from Ms. Blaylock, two opinions from state agency physicians and a Consultative Mental Status Evaluation by Dr. Christa Marshall, Psy.D. On October 25, 2017, the ALJ issued a

4

written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 7-20.) The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 12-20.)

**Step One.** At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from the time of her alleged onset date, March 11, 2014, through her date last insured, September 30, 2015. (R. at 12.)

**Step Two.** At step two, the ALJ determined that through her date last insured, Plaintiff had a severe impairment, PTSD. (R. at 12.)[4]

**Step Three.** At step three, the ALJ considered whether Plaintiff's impairments, either singly or in combination, met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 13-15.) Specifically, the ALJ considered whether Plaintiff's mental impairment, PTSD, met or medically equaled the criteria of listing 12.15 (trauma- and stressor-related disorders). (R. at 13-15.)

At this step, Plaintiff's condition must satisfy all of the enumerated criteria in Listing 12.15 to qualify her as disabled.[5] (R. at 13-15.) To satisfy the criteria in Listing 12.15, Plaintiff must prove she both satisfied the Paragraph A criteria of the listing and that she met either the Paragraph

---

[4]     The ALJ also considered Plaintiff's allegation that she is disabled due to a back injury, concluding that because the record was "devoid of any diagnosis or treatment for the claimant's alleged back pain" and because the Plaintiff did not report any symptoms or limitations stemming from any spinal condition, the back injury is not medically determinable. Plaintiff has not challenged this finding in her brief and therefore the argument is waived. *Diane S.P. v. Berryhill*, 379 F. Supp. 3d 498, 533 n.23 (E.D. Va. 2019).

[5]     At step three, Plaintiff bears the burden of proving that she meets or medically equals a listing. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The listings "were designed to operate as a presumption of disability that makes further inquiry unnecessary" and, consequently, require an exacting standard of proof. *Sullivan v. Zebley*, 493 U.S. 521, 532-33 (1990). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* at 530.

B or Paragraph C criteria of the Listing. (R. at 13-15.) For Paragraph A, Plaintiff must provide

medical documentation of each of the following:

> 1. Exposure to actual or threatened death, serious injury, or violence;
>
> 2. Subsequent involuntary re-experiencing of the traumatic event (for example, intrusive memories, dreams, or flashbacks);
>
> 3. Avoidance of external reminders of the event;
>
> 4. Disturbance in mood and behavior; and
>
> 5. Increases in arousal and reactivity (for example, exaggerated startle response, sleep disturbance).

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.15. Upon satisfying Paragraph A, Plaintiff must present

documentation showing either:

> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):[6] 1. Understand, remember, or apply information (see 12.00E1). 2. Interact with others (see 12.00E2). 3. Concentrate, persist, or maintain pace (see 12.00E3). 4. Adapt or manage oneself (see 12.00E4). [OR]
>
> C. [The] mental disorder in this listing category is "serious and persistent;" that is, [the claimant has] a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both: 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [the] mental disorder (see 12.00G2b); and, 2. Marginal adjustment, that is, [a] minimal capacity to adapt to changes in [the] environment or to demands that are not already part of [the claimant's] daily life (see 12.00G2c).

*Id.*

---

[6]     The regulations define "extreme limitation" to mean "[the claimant is] not able to function in this area independently, appropriately, effectively, and on a sustained basis," while "marked limitation" means that "[the claimant's] functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00F2.

Having referenced this standard, the ALJ determined that Plaintiff's PTSD failed to meet or medically equal the criteria of Listing 12.15. (R. at 13.) The ALJ first considered whether Plaintiff's impairment satisfied the requirements of Paragraph B under the Listing. (R. at 13.) As to the first factor — Plaintiff's ability to understand, remember and apply information — the ALJ found that Plaintiff experienced moderate limitations. (R. at 13.) In support of this conclusion, the ALJ cited to the consultative examiner's finding that while Plaintiff had moderate difficulty understanding and remembering simple or complex instructions when she felt anxious, Plaintiff could follow commands during the examination and had a cooperative attitude. (R. at 13.) The ALJ noted that Plaintiff has a college education and nearly completed a master's degree. (R. at 13.) The ALJ further observed that Plaintiff wrote poetry, took care of her personal hygiene independently, cooked meals, cleaned her home, cared for her dogs and tended to her laundry. (R. at 13-14.)

As to the second factor — Plaintiff's ability to interact with others — the ALJ likewise found that Plaintiff experienced moderate limitations. (R. at 14.) The ALJ acknowledged Plaintiff's reports that she could not be around a large group of strangers, because she would experience flashbacks and a heightened startle response, and that she no longer participates in social activities. (R. at 14.) However, the ALJ noted that Plaintiff could go outside alone and shop in stores by herself, though she preferred going with her husband. (R. at 14.) The ALJ also noted that the consultative examiner found no evidence that Plaintiff would need additional supervision while working, or that she would have difficulty accepting instructions from a supervisor. (R. at 14.) And the ALJ found that, despite some social isolation, medical practitioners described Plaintiff as pleasant and cooperative and did not report any signs of inappropriate behaviors. (R. at 14.)

7

With regard to the third factor — Plaintiff's ability to concentrate, persist and maintain pace — the ALJ found Plaintiff had moderate limitations. (R. at 14.) The ALJ noted that in her testimony, Plaintiff described decreased concentration, particularly when she experienced flashbacks, which could affect her ability to function for up to an entire day. (R. at 14.) However, the ALJ cited to the consultative examiner's finding that Plaintiff could complete detailed and complex tasks, though she would have moderate difficulty when anxious. (R. at 14.) The ALJ also observed that Plaintiff could drive independently, which required her to maintain a certain degree of concentration and attention on a sustained basis. (R. at 14.) Lastly, the ALJ noted that Plaintiff could perform a variety of household chores without difficulty. (R. at 14.)

As to the fourth and final Paragraph B factor — Plaintiff's ability to adapt or manage herself — the ALJ found that Plaintiff experienced mild limitations. (R. at 14.) The ALJ explained that while Plaintiff reported difficulty sleeping due to nightmares, she independently tended to her personal needs, cooked meals, managed household finances, cleaned her home, performed laundry and engaged in regular exercise. (R. at 14.) Further, the consultative examiner found that Plaintiff would experience mild difficulty dealing with usual work stressors. (R. at 14.) Because Plaintiff failed to establish at least two marked limitations or one extreme limitation under Paragraph B, the ALJ concluded that Plaintiff did not satisfy the criteria of Paragraph B. (R. at 14.)

Similarly, the ALJ found that the evidence likewise failed to satisfy the Paragraph C criteria. (R. at 14.) Specifically, the ALJ explained that the record did not establish that Plaintiff's PTSD resulted in marginal adjustment despite treatment or that Plaintiff participated in any kind of structured setting or treatment that diminished the signs or symptoms of her mental disorder. (R. at 14.) Ultimately, because Plaintiff failed to present evidence that satisfied the criteria of either Paragraph B or Paragraph C under Listing 12.15, the ALJ concluded that Plaintiff's PTSD, either

singly or in combination with other impairments, did not meet or medically equal that Listing. (R. at 14.)

**Residual Functional Capacity.** After step three, the ALJ next considered the Plaintiff's residual functional capacity. 20 C.F.R. §§ 404.1520(a)-(f), 404.1545(a)(1). RFC "is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work." *Mascio*, 780 F.3d at 635 (quoting 20 C.F.R. § 416.929(a)(1)). In analyzing a claimant's abilities, the ALJ must first assess the nature and extent of the claimant's physical limitations and then determine the claimant's RFC for work activity on a regular and continuing basis. § 404.1545(b).

During the sequential analysis, the ALJ must analyze the claimant's medical records and any developed medical evidence such as expert evaluations. 20 C.F.R. §§ 404.1512, 404.1527. If the medical opinions are inconsistent with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. § 404.1527(c)(2)-(6), (d). The regulations further require a comparative analysis of competing medical opinions. *See, e.g.*, § 404.1527(c)(1).

In accordance with the regulations, the ALJ evaluated the opinions of the state agency psychological consultants; the consultative examiner, Dr. Marshall; and a treating clinician, Ms. Blaylock. As relevant here, the ALJ afforded little weight to the state agency psychological consultants, partial weight to Dr. Marshall's opinion and some weight to Ms. Blaylock's opinion. (R. at 18.) The ALJ found that Plaintiff could perform a full range of work at all exertional levels, with some non-exertional limitations. (R. at 15-18.) Specifically, the ALJ found that Plaintiff could concentrate, persist or maintain pace consistent with the ability to perform unskilled work. (R. at 15.) Plaintiff could also understand and remember short, simple instructions. (R. at 15.) And

9

Plaintiff could maintain occasional interaction with supervisors, co-workers and the public. (R. at 15.)

**Step Four.** At step four, based on Plaintiff's age, work experience and RFC, the ALJ found that Plaintiff could not perform her past relevant work as an adult literacy instructor. (R. at 18.)

**Step Five.** However, at step five, the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy, including the representative occupations of kitchen helper, laundry folder and produce inspector/grader. (R. at 19-20.) In support of this conclusion, the ALJ relied on testimony solicited from VE Lori Cowan. Ms. Cowan testified that jobs existed in significant numbers in the national economy for an individual of the same age as Plaintiff and with the same educational background and work experience that "should never be exposed to climbing ladders, ropes or scaffolds; . . . [should] never be exposed to unprotected heights; . . . could understand, remember, and carry out short, simple instructions consistent with the performance of unskilled work; would be able to concentrate, persist or maintain a pace consistent with the ability to perform unskilled work; could have occasional interaction with supervisors, coworkers and the public." (R. at 53-55.)

Accordingly, the ALJ concluded that Plaintiff did not qualify as disabled under the Act. (R. at 19-20.)

### III.   ANALYSIS

As described above, Plaintiff's appeal to this Court alleges that the ALJ's decision is not supported by substantial evidence. Plaintiff argues that the ALJ erred at step three, in finding that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments; in finding that Plaintiff had the residual functional capacity to perform a full range of work, with additional non-exertional limitations; and at step

five, by failing to consider the vocational expert's testimony in concluding that Plaintiff could perform other work that exists in significant numbers in the national economy. (Pl.'s Mem. at 2-7.) For the reasons set forth below, the ALJ did not err in his decision.

> **A.     The ALJ Did Not Err in Finding that Plaintiff's Impairments, Either Singly or in Combination, Did Not Meet or Medically Equal the Severity of One of the Listed Impairments.**

Plaintiff first challenges the ALJ's step-three determination that Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R., Part 404, Subpart D, Appendix 1. (Pl.'s Mem. at 2.) Specifically, Plaintiff contends that substantial evidence supports a finding that she qualified as disabled under Listing 12.15 (trauma- and stressor-related disorders), which the ALJ considered but ultimately determined that Plaintiff did not meet. (Pl.'s Mem. at 2-5.) Plaintiff asserts that the ALJ ignored evidence that, because her PTSD stemmed from past sexual trauma, she would have "marked difficulty interacting appropriately with the public, given that 50% of the population is male" and "difficulty accepting instructions from a supervisor, if that supervisor were male, predatory, or asking her to act with me[n]." (Pl.'s Mem. at 4.) Defendant responds that substantial evidence supports the ALJ's step-three conclusions. (Def.'s Mot. Summ. J. & Br. Supp. Thereof at 13-14, ECF No. 8 ("Def.'s Mem.").)

As explained below, the Court finds that substantial evidence supports the ALJ's conclusions as to each of the factors under Listing 12.15 and that the ALJ adequately explained his conclusion by citing to relevant evidence in the record.

> ### 1.    *Plaintiff's Objective Medical Records Support the ALJ's Step-Three Conclusions.*

A review of Plaintiff's medical records provides substantial evidence to support the ALJ's findings regarding Listing 12.15. Notably, the record establishes that Plaintiff's treatment for her

mental health symptoms began *after* her date of last insured. Nevertheless, a review of Plaintiff's treatment records occurring after her date of last insured, and outside the relevant period, supports the ALJ's conclusion that Plaintiff's impairments did not meet the requirements of Listing 12.15.

First, Plaintiff's records support the ALJ's finding that Plaintiff experienced only moderate limitations in her ability to understand, remember or apply information. (R. at 13.) Beginning in November 2014, Plaintiff started seeing Ms. Blaylock for mental health treatment related to her PTSD. (R. at 224-30.) Records from these sessions indicate that Plaintiff typically presented as attentive, cooperative and engaged. (R. at 209, 231, 261, 263, 276-79, 281.) Further, Plaintiff demonstrated adequate immediate, recent and remote recall. (R. at 227, 230-31.) Ms. Blaylock also consistently reported that Plaintiff proved oriented as to time, place, situations and people. (R. at 227, 230-31.) Additionally, as the ALJ noted, Plaintiff has a college education, nearly completed a master's degree, and engaged in a number of independent tasks at home such as cooking, cleaning and tending to her laundry. (R. at 13-14.) Accordingly, Plaintiff's treatment records support the ALJ's finding that Plaintiff had a moderate limitation in the area of understanding, remembering or applying information.

Likewise, Plaintiff's treatment records support the ALJ's finding of moderate limitation in Plaintiff's ability to interact with others. (R. at 14.) Regarding this finding, the ALJ noted that Plaintiff reported she avoided large groups of strangers and social activities, and that she experienced flashbacks and a heightened startle response. (R. at 14.) However, as noted by the ALJ, Plaintiff stated that she could go outside alone and shop in stores by herself, though she preferred going with her husband. (R. at 14, 42, 46.) The consultative examiner reported that Plaintiff regularly goes to the gym, but only because there is a room with mirrors allowing her to see behind her while she is there. (R. at 302.) Ms. Blaylock's progress notes reflect that although

Plaintiff's mental health symptoms sometimes caused her to feel detached and isolated, (R. at 226) Plaintiff reported that she could interact with others in small groups. (R. at 226 (noting that Plaintiff shared her writings and poetry in small group settings).) And Ms. Blaylock often described Plaintiff as cooperative, engaged and attentive. (R. at 209, 231, 261, 263, 276-79, 281.) The consultative examiner observed that, although "exceptionally anxious" during parts of the interview, Plaintiff was able to follow commands, was cooperative and was able to complete tasks given to her by the examiner. (R. at 305.) Given these treatment records, the ALJ's finding that Plaintiff had a moderate limitation in her ability to interact with others is supported by substantial evidence.

Plaintiff's treatment records also support the ALJ's conclusion that Plaintiff experienced moderate limitations in her ability to concentrate, persist and maintain pace. (R. at 14.) While Ms. Blaylock reported that Plaintiff sometimes had trouble concentrating, (R. at 227-28) Plaintiff nonetheless presented as "attentive and cooperative" during appointments. (R. at 228.) Further, Ms. Blaylock noted that Plaintiff could perform calculations and abstract reasoning when she did not experience intrusive thoughts. (R. at 228.) Finally, the record reflects that Plaintiff writes poetry, manages the household finances online, and had drafted an unpublished 365-page book. (R. at 14, 17, 49.) Based upon these facts, substantial evidence supports the ALJ's finding that Plaintiff had a moderate limitation in her ability to concentrate, persist and maintain pace.

As for Plaintiff's ability to adapt and manage herself — the final Paragraph B criterion — the limited records available again provide support for the ALJ's finding of mild limitations. (R. at 15.) As noted by the ALJ, the record reflects that Plaintiff is able to cook meals, manage the household finances online, exercise, do laundry and maintain her home. (R. at 14.) Additionally, Ms. Blaylock repeatedly described Plaintiff as well-groomed and "neat." (R. at 230-31, 276-79,

13

281.) This observation is repeated in the consulting examiner's report as well as by Plaintiff's treating physician. (R. at 305 ("very nicely dressed and groomed for today's evaluation"), 284-92 (describing Plaintiff as alert, oriented x3, well-nourished, well-developed, while noting some distress on occasion).) Given these treatment records, the ALJ's finding that Plaintiff had a mild limitation in the area of adapting or managing oneself is supported by substantial evidence.

Finally, the ALJ properly observed that the record failed to establish the criteria required in Paragraph C. (R. at 14.) The ALJ found no evidence in the record that, despite Plaintiff's treatment, Plaintiff had a minimal capacity to adapt to changes of her environment or to the demands that are not already a part of her daily life. (R. at 14.) Indeed, if anything, Plaintiff's records reflect that she was adapting to her PTSD diagnosis and making progress with her therapy. Ms. Blaylock reported that Plaintiff's healing process was "a continuum which can ultimately lead to a rich and satisfying life." (R. at 229.) Ms. Blaylock further explained that Plaintiff had gained new perspectives and responded positively to therapy, "mak[ing] progress as desired." (R. at 229.)

Ultimately, although Plaintiff provided only limited mental health treatment notes from outside the relevant period, those notes provide substantial support for the ALJ's conclusion that Plaintiff's PTSD and other impairments, either singly or in combination, failed to satisfy the requirements of Listing 12.15.

## 2. The Mental Health Opinion of Record Supports the ALJ's Step-Three Conclusions.

At step three, the ALJ also cited to the opinion of the consultative state agency psychologist, Dr. Christa M. Marshall, Psy.D. (R. at 17-18.) Dr. Marshall's opinion provides further support for the ALJ's step-three conclusions.

On April 24, 2017, Dr. Marshall performed a mental status examination of Plaintiff. (R. at 300-13.) During this examination, Dr. Marshall opined that Plaintiff could experience moderate

14

difficulty understanding and remembering simple or complex instructions when she felt anxious. (R. at 307.) However, Dr. Marshall observed that Plaintiff could follow commands throughout the examination, despite appearing "exceptionally anxious." (R. at 305.)

As for Plaintiff's ability to interact with others, Dr. Marshall hypothesized that Plaintiff likely had marked difficulty interacting appropriately with the public, "given that 50% of the public is male;" however, Dr. Marshall observed that Plaintiff could go to the store on her own. (R. at 307.) Moreover, Dr. Marshall determined that Plaintiff would not need additional supervision in a work environment and would have moderate difficulty interacting with male co-workers. (R. at 307.) Dr. Marshall noted that Plaintiff proved cooperative during the examination. (R. at 305.)

Regarding Plaintiff's ability to concentrate, persist and maintain pace, Dr. Marshall reported that Plaintiff could follow commands throughout the examination despite reporting a decreased ability to concentrate. (R. at 307.) Further, Dr. Marshall opined that Plaintiff could complete detailed and complicated tasks, although she might experience moderate difficulty if she felt anxious. (R. at 307.) Additionally, Dr. Marshall reported that Plaintiff drove a vehicle independently. (R. at 304.)

Finally, as for Plaintiff's ability to adapt and manage herself, Dr. Marshall opined that Plaintiff might have mild difficulty dealing with usual work stressors encountered in competitive work. (R. at 307.) And although Plaintiff's Montreal Cognitive Assessment score indicated significant cognitive impairment on the same level as individuals with early signs of dementia, Dr. Marshall explained that this score proved grossly out of line with Plaintiff's self-reported abilities and her presentation during the examination. (R. at 305-06.) Accordingly, Dr. Marshall warned that the findings should be interpreted with caution and are most likely a result of her anxiety during the examination. (R. at 305-06.)

In summary, Dr. Marshall's findings regarding Plaintiff's abilities and mental functioning are nearly identical to the ALJ's step-three findings. The findings mirror each other, with the exception of Dr. Marshall's finding that Plaintiff would have marked difficulty interacting appropriately with the public. (R. at 307.) Dr. Marshall, however, also found that Plaintiff would have only moderate difficulty interacting with male co-workers and would not need additional supervision on the job. (R. at 307.) Because Dr. Marshall opined that Plaintiff would have both a moderate and marked difficulty in interacting with others, her findings substantially align with the ALJ's step-three findings. For these reasons, Dr. Marshall's opinion provides substantial support for the ALJ's conclusion that Plaintiff's mental impairments did not meet or medically equal the criteria of Listing 12.15.

Finally, as described above, the ALJ thoroughly set forth the evidence in the record, as well as his reasoning in reaching his conclusion. The ALJ outlines the necessary requirements to satisfy the Paragraph B and C criteria of listing 12.15. (R. at 13-14.) The ALJ makes a finding of Plaintiff's limitations for each enumerated criterion under Paragraph B and Paragraph C, citing Plaintiff's medical history, testimony and other relevant evidence. (R. at 13-14.) The ALJ concludes his analysis of the Listing 12.15 factors by explaining that Paragraph B criteria were not met because Plaintiff's "impairment did not cause at least two 'marked' limitations or one 'extreme' limitation." The ALJ further concludes that Paragraph C criteria was not satisfied because the "[t]he record does not establish that the [Plaintiff] has only marginal adjustment" and that "[t]here is no evidence that the [Plaintiff] is under any kind of structured setting...that diminishes the signs or symptoms of her mental disorder, or that she has a minimal capacity to adapt to changes." (R. at 14.) The Court finds, therefore, that the ALJ adequately explained his conclusion by citing to relevant evidence in the record.

**B.      The ALJ Did Not Err in Formulating Plaintiff's Residual Functional Capacity.**

Plaintiff also argues that the ALJ erred in concluding that Plaintiff had the residual functional capacity to perform a full range of work with additional, non-exertional limitations. (Pl.'s Mem. at 5-6.) Plaintiff again focuses on Dr. Marshall's opinion, arguing that, contrary to the ALJ's assessment, the evidence of record supports Dr. Marshall's conclusions that Plaintiff would have "marked" difficulty interacting with the public.[7] (Pl.'s Mem. at 5-6.) Although Plaintiff challenges the ALJ's RFC conclusion generally, because she only specifically raises arguments related to Dr. Marshall's opinion, the Court will limit its analysis to this issue. Defendant responds that the ALJ properly explained, and the evidence of record adequately supports, the weight assigned to Dr. Marshall's opinion. (Def.'s Mem. at 20-25.)

Dr. Marshall conducted a consultative examination of Plaintiff on March 27, 2017. (R. at 300.) In her subsequent report, Dr. Marshall offered several opinions related to Plaintiff's impairments. (R. at 300-08.) Dr. Marshall opined that Plaintiff had the ability to complete simple and repetitive tasks, but that she may have moderate difficulty understanding and remembering simple instructions when she experiences anxiety. (R. at 307.) Dr. Marshall further opined that Plaintiff could complete detailed and complex tasks, though her anxiety caused moderate difficulty in understanding and remembering complex instructions. (R. at 307.)

---

[7]      Plaintiff also appears to suggest that the ALJ erred by improperly discrediting her subjective complaints. (Pl.'s Mem. at 5-6 ("the ALJ disregard[ed] the undisputed evidence from [Plaintiff] . . .").) However, Plaintiff, represented by counsel, fails to adequately articulate or develop the contours of this challenge. Therefore, the Court will not conduct a full analysis pursuant to *Craig v. Chater* and its progeny. 76 F.3d 585 (4th Cir. 1996). Moreover, to the extent that Plaintiff asserts that her subjective complaints support an opposite conclusion to the ALJ, under the substantial evidence standard, "'[a]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn*, 607 F. App'x at 274 (quoting *Clarke*, 843 F.2d at 272-73). Accordingly, courts will not reverse the ALJ merely because Plaintiff's subjective complaints support an opposite conclusion. Indeed, if such were the case, courts would be required to reverse every decision of the Commissioner on appeal.

Dr. Marshall explained that Plaintiff would likely experience moderate difficulty maintaining regular attendance, performing work activities on a consistent basis or completing a normal workweek. (R. at 307.) However, Dr. Marshall also reported that Plaintiff would not require additional supervision while working or have difficulty accepting instructions from a supervisor, unless that supervisor were male, predatory or asking her to interact with men. (R. at 307.) Dr. Marshall opined that Plaintiff would have marked difficulty in interacting appropriately with the public, "given that 50% of the public is male." (R. at 307.) Further, Dr. Marshall determined that Plaintiff would likely experience mild difficulty dealing with the usual stresses encountered in competitive work and would experience moderate difficulty interacting with co-workers who are male. (R. at 307.)

The ALJ afforded partial weight to Dr. Marshall's opinion. (R. at 18.) The ALJ concluded that although Dr. Marshall's opinion proved "generally consistent with her examination and the claimant's activities, her conclusion that [Plaintiff] would have 'marked' difficulty interacting with the public is not supported by the evidence." (R. at 18.) The ALJ explained that Dr. Marshall appeared to reach this conclusion based on her assumption that Plaintiff would experience flashbacks any time she found herself around unfamiliar men. (R. at 18.) The ALJ stated that this assumption was inconsistent with Plaintiff's reported daily activities, including leaving her home, driving a car and shopping in stores. (R. at 18.) Indeed, the ALJ noted that although Plaintiff avoided triggers, nothing in Plaintiff's treatment records suggested that interaction with every unknown male would result in her experiencing a traumatic flashback. (R. at 18.) Therefore, the ALJ afforded Dr. Marshall's opinion partial weight. (R. at 18.)

The Court finds the ALJ's explanation for the weight assigned to Dr. Marshall's opinion legally sufficient, because the ALJ provided good reasons for affording Dr. Marshall's opinion

partial weight and pointed to specific categories of evidence in the record that contradicted Dr. Marshall's conclusions. (R. at 18.) More importantly, substantial evidence supports the ALJ's assignment of weight.

The ALJ adequately explained his reasons for affording Dr. Marshall's opinion partial weight. As explained above, he concluded that the opinion was unsupported by medical evidence. This is one factor that the regulations specifically authorize the ALJ to consider. *See* 20 C.F.R. § 404.1527(c)(3)-(4). Substantial evidence also supports this conclusion. In addition to the evidence relied on by the ALJ, specifically that the Plaintiff reported that she independently engaged in public activities outside of the home such as shopping in stores, Plaintiff reported to Ms. Blaylock that she shared her writing and poetry with others in small group settings. (R. at 226.) Moreover, Ms. Blaylock's records indicate that in 2016, Plaintiff was taking steps to return to her poetry reading night. (R. at 279.) Further, the ALJ noted that nothing in the record suggested that every interaction with an unknown male would result in a flashback and review of the record confirms this observation. (R. at 18.) This evidence undermines Dr. Marshall's endorsement of a marked limitation in Plaintiff's ability to interact with the public — i.e., that Plaintiff could not be around unknown males — and supports the ALJ's assessment of Dr. Marshall's opinion.

Additionally, Dr. Marshall failed to provide an explanation for her opinion that Plaintiff would have marked difficulty interacting with the public. Specifically, Dr. Marshall did not explain how she expected Plaintiff to react when interacting with males or otherwise identify any assumptions made. She additionally failed to explain why Plaintiff would only have moderate difficulty interacting with male co-workers, but marked difficulty interacting with the public. For these reasons, her opinion on this issue is also conclusory, which alone proves sufficient to detract from the weight assigned. *See* 20 C.F.R. § 404.1527(c)(3) ("[B]ecause nonexamining sources have

19

no examining or treating relationship with you, the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions"). And to the extent that Plaintiff argues that Ms. Blaylock's records and her own statements support Dr. Marshall's assessment, the Court notes that "[a]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Dunn*, 607 F. App'x at 274 (quoting *Clarke*, 843 F.2d at 272-73). Because the ALJ sufficiently explained the weight assigned to Dr. Marshall's opinion and substantial evidence supports the weight assigned, the Court finds no error.

### C.    The ALJ Did Not Err at Step Five in Determining that Plaintiff Could Perform Other Work that Exists in Significant Numbers in the National Economy.

Finally, Plaintiff argues that the ALJ erred by not considering the VE's testimony that a person with Plaintiff's characteristics who would be off task 15 percent of the day or absent two days a month would be unable to perform any work in the national economy. (Pl.'s Mem. at 6.) Defendant responds that because the ALJ relied on a hypothetical that captured all of Plaintiff's substantially supported limitations, Plaintiff cannot rely on a different hypothetical that the ALJ ultimately rejected to challenge the ALJ's step-five conclusion. (Def.'s Mem. at 27.)

At the fifth step of the sequential analysis, the Commissioner must show that, considering the claimant's age, education, work experience and RFC, she could perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). The Commissioner can carry her burden at the last step with the testimony of a VE. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir.1989). During the VE's testimony, the ALJ must pose hypothetical questions that accurately represent the claimant's RFC based on all of the record evidence and a fair description of all of the claimant's impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Id.* Only when the hypothetical posed

represents all of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.*; *see also Hines v. Barnhart,* 453 F.3d 559, 567 (4th Cir. 2006) (finding that the VE's testimony had no value, because he did not take all the claimant's impairments into account).

Here, during Plaintiff's hearing, the ALJ solicited testimony from VE Lori Cowan, posing several hypotheticals to Ms. Cowan based on possible RFC limitations. (R. at 53-55.) In his first hypothetical, the ALJ asked Ms. Cowan to imagine an individual of the same age as Plaintiff and with the same educational background and work experience. (R. at 53-54.) The ALJ then detailed the RFC limitations that he ultimately adopted and asked Ms. Cowan whether such an individual could perform jobs existing in significant numbers in the national economy. (R. at 53-54.) Ms. Cowan responded that such a person could perform the representative occupations of dishwasher, laundry folder and product inspector/grader, all of which had at least 15,000 jobs in the national economy. (R. at 54.)

In his second hypothetical, the ALJ asked Ms. Cowan if the same individual who would be off task 15 percent of an eight-hour day or miss two days of work per month could perform jobs existing in the national economy. (R. at 55.) Ms. Cowan responded that no jobs existed in the national economy for such an individual. (R. at 55.) Plaintiff argues that the ALJ erred by not accounting for this testimony in his ultimate disability determination. (Pl.'s Mem. at 5-7.) However, Plaintiff's RFC does not include the limitation set forth in the second hypothetical and substantial evidence supports the RFC limitations endorsed by the ALJ. Indeed, the "ALJ is not required to accept the vocational expert's opinion for a hypothetical based on limitations that the ALJ did not include in the RFC." *Prim v. Colvin*, 2015 WL 4757104, at *4 (W.D. Va. Aug. 11, 2015); *see also Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005) ("In order for a vocational

expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record." (quoting *Walker*, 889 F.2d at 50)).

Because the ALJ's first hypothetical — not challenged by Plaintiff — properly captured Plaintiff's RFC, the ALJ appropriately relied on this hypothetical. Similarly, because the second hypothetical included limitations not found in the RFC or supported by the record, the ALJ appropriately disregarded this hypothetical. Accordingly, the ALJ properly relied on the VE's testimony to support his step-five conclusion.

## IV.   CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 6) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 8) be GRANTED and the final decision of the Commissioner be AFFIRMED.

Let the Clerk file a copy of this Report and Recommendation electronically, notify all counsel of record and forward a copy to United States District Judge M. Hannah Lauck.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/ _____

Elizabeth W. Hanes
United States Magistrate Judge

Richmond, Virginia
Date: July 20, 2020